**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

**STEVEN HUNTER, an individual, PETER SHELP, an individual, and SUPERIOR WALLS OF THE ST. CROIX VALLEY, L.L.C., a Wisconsin limited liability corporation,**

**Plaintiffs,**

**v.**

**SUPERIOR WALLS OF AMERICA, LTD., a Pennsylvania corporation, MELVIN ZIMMERMAN, an individual, GLENN GINGRICH, an individual, GEORGE KOELSCH, JR., an individual, CARL MARTIN, an individual, LEE HAWTHORNE, an individual, ROBERT FINGER, an individual, and JOHN STOLZFUS, an individual,**

**Defendants.**

**Civil No. 00-2519(DWF/SRN)**

**O R D E R**

---

J. Michael Dady, Esq., and Jennifer L. Gehrig, Esq., on behalf of the Plaintiffs.

William L. Killion, Esq., and Arthur L. Pressman, Esq., on bchalf thc Defendants.

---

SUSAN RICHARD NELSON, United States Magistrate Judge

The above-entitled matter came before the undersigned Magistrate Judge of District Court on July 24, 2001, on the Defendants' motion to exclude evidence allegedly improperly obtained by the Plaintiffs. The Defendants seek

FILED SEP 13 2001
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD________
DEPUTY CLERK________

to exclude from evidence certain statements made by Defendant Robert Finger, and all evidence flowing from those statements, because of the personal meeting on May 16, 2001, between Plaintiffs' counsel Michael Dady and Defendant Finger, which was not authorized by defense counsel. The Defendants also seek to obtain the notes made by Mr. Dady during the May 16 meeting.

## I. FACTUAL BACKGROUND

As an initial matter, the Court notes that the hearing on the Defendants' motion to exclude evidence was not an evidentiary hearing. As such, the Court is in no position to render credibility determinations based on the current record. Rather, the Court will incorporate only the uncontested facts into its analysis, and those facts, taken from the Affidavits of J. Michacl Dady and Steven Hunter, and exhibits attached thereto, as well as the Second Declaration of Robert Finger[1], are as follows:

On or about May 11, 2001, Robert Finger telephoned Steven Hunter and advised him that Finger had ended his employment with Superior Walls by submitting his resignation, which had been accepted. Finger told Hunter that he believed Superior Walls had made several misrepresentations in relation to Hunter's purchase of a franchise/license from Superior Walls, and

[1] There appears to be no original declaration of Robert Finger in the record before this Court.

he wanted to meet with Hunter and Hunter's lawyer to discuss the information he had regarding the circumstances related to that purchase. Mr. Hunter contacted his attorney, J. Michael Dady, and advised him of Hunter's telephone call. Mr. Dady suggested that Hunter set up the requested meeting. Hunter arranged for a meeting of the three men to take place at the Philadelphia airport on May 16, 2001. On the airplane en route to Philadelphia, Mr. Dady noted that Finger was a named Defendant in this lawsuit.

At the commencement of the meeting on May 16, Mr. Dady asked Mr. Finger whether he was represented by an attorney in this matter, adding that if Finger was represented, there would be no interview. There are two versions of Finger's response to this question: either Finger answered that he was not represented by an attorney, or he answered that he was not sure whether his legal representation continued now that he was no longer an employee of Superior Walls. Mr. Dady clarified that he was the attorney for Mr. Hunter and the rest of the Plaintiffs in this matter, and that he was there to represent them in connection with the interview of Finger. The meeting proceeded. Mr. Dady did not ask Mr. Finger to discuss legally privileged matters.

After explaining an overview of his educational background, employment history, and work with Superior Walls, Finger explained his

dealings with Mr. Hunter and other franchisees. Among the subjects he discussed was the alleged 80% failure rate of Superior Walls franchisees/licensees nationally. The meeting lasted approximately 50 minutes. At the conclusion of the meeting, Mr. Finger asked Mr. Dady if he should call Mr. Pressman. Mr. Dady responded that he could not give legal advice to Mr. Finger, but asked Finger why he would want to contact Mr. Pressman. Finger did not answer.

Subsequent communications between Hunter and Finger indicate that Finger did communicate with Mr. Pressman following the May 16 interview in an attempt to negotiate with his former employer (perhaps about the disputed commissions over which he had resigned his employment), and to determine whether Superior Walls would agree to again represent him in this action.

Upon returning from the Philadelphia meeting with Finger, Mr. Dady received an e-mail from Mr. Pressman, sent on May 16, 2001, that implied Mr. Dady and/or the Plaintiffs had initiated the request for the meeting under the pretext that the Plaintiffs would consider withdrawing their claims against Finger. On May 17, 2001, Mr. Dady responded by e-mail to Mr. Pressman asking him to explain his allegation that the Finger meeting was somehow pretextual in nature, and requested that Mr. Pressman respond to Finger's declaration that he was no longer represented by Mr. Pressman.

Receiving no response from Mr. Pressman, Mr. Dady faxed Finger and Mr. Pressman a letter on May 24, 2001, asking each of them to advise him of their respective positions regarding whether Finger was currently represented by Mr. Pressman.

Sometime during the week of May 28, 2001, Finger called Hunter confirming his earlier communication to Hunter and Mr. Dady that Superior Walls was not representing him, and expressed concern about talking with Hunter because he had yet to settle matters with Superior Walls regarding his resignation, including his severance agreement. Finger called and left a message for Mr. Dady, asking him to return his call. Mr. Dady did not return Finger's call, and determined not do so until this matter was clarified.

On May 30, 2001, Mr. Finger faxed Mr. Hunter a copy of a May 30, 2001, letter he wrote to Mr. Pressman, stating that he was not represented by Superior Walls. And, on June 6, 2001, Finger contacted Hunter again. The parties have not spoken since that time.

Mr. Dady received a response to his May 24, 2001, letter to Mr. Pressman only after Mr. Pressman requested a conference with this Court. Mr. Dady received a letter dated June 11, 2001, the same day as the conference with the Court, stating that Mr. Pressman had recently told Mr. Finger he would be "represented [by Buchanan Ingersoll], defended and held harmless from the claims asserted by Plaintiffs, notwithstanding

termination of his employment." In addition, the letter stated that Superior Walls had "also agreed to reimburse [Finger] for any time he may spend, at counsel's discretion, in the defense of this matter at a rate of $35 per hour, plus reimbursement of any phone expenses."

## II. DISCUSSION

The Defendants contend that Mr. Dady violated Rule 4.2 of the Minnesota Rules of Professional Conduct when he interviewed Defendant Finger. However, the Defendants clarify that they are not challenging Mr. Dady's motives, that this is not a disciplinary proceeding, and that they do not seek Mr. Dady's disqualification as counsel for the Plaintiffs. Rather, the Defendants submit that they are attempting to remedy Mr. Dady's violation of Rule 4.2, which occurred when he contacted a party whom, Defendants contend, he knew to be represented by counsel without securing the consent of counsel.

The Defendants base their position on their reading of Rule 4.2 of the Minnesota Rules of Professional Conduct, and a formal opinion issued in 1995 by the ABA Committee on Ethics and Professional Responsibility (ABA Formal Opinion 95-396, *Communications with Represented Persons).* Rule 4.2 states, in relevant part, that:

> In representing a client, a lawyer shall not communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has

> the consent of the other lawyer or is authorized by law to do so.

Thus, argue the Defendants, Mr. Dady was prohibited from communicating with Defendant Finger, a represented party in this case, regarding the subject matter of this case, without opposing counsels' consent. And, since it is undisputed that Mr. Dady did not secure the consent of either the law firms of Grant Plant Mooty or Buchanan Ingersoll, P.C., the only question is whether Mr. Dady knew that Defendant Finger was represented by counsel.

On that subject, the Defendants assert that the entry of an appearance of counsel on Defendant Finger's behalf constitutes conclusive evidence that Mr. Dady had knowledge that Mr. Finger was indeed represented in this matter.

To be sure, on February 13, 2001, counsel for the Defendants filed an Answer and Counterclaim on behalf of all named Defendants in this matter (Docket No. 4). Counsel for the Defendants submit that at no time since they filed the Answer and Counterclaim have they moved to withdraw their appearance on behalf of Defendant Robert Finger. They argue that one need not look any further than their entry of an appearance to establish the state of Mr. Dady's knowledge about Mr. Finger's representation.

Mr. Dady asserts that he did not violate Rule 4.2 when he met with Defendant Finger because his contact with Finger, a former employee of Superior Walls, did not in any way rise to the level of an ethical code violation.

In addition, Mr. Dady argues that his contact with Defendant Finger did not violate Minnesota Rules of Professional Conduct 4.3, which governs attorney contact with unrepresented parties. Accordingly, Mr. Dady argues that exclusion of the evidence he obtained in the May 16 meeting with Defendant Finger is entirely unwarranted.

First, with respect to Rule 4.2, the Plaintiffs assert that, at the time of the May 16, 2001 meeting, Robert Finger was an unrepresented party, and therefore Mr. Dady was in no way obligated to contact Superior Walls' attorney before proceeding with the meeting with Finger.

The Plaintiffs next argue that Mr. Dady did not violate Rule 4.2 because he was expressly advised by Robert Finger that Finger was not represented by counsel. The Plaintiffs point out that under Minn. R. Prof. Conduct 4.2, an attorney need not obtain the consent of counsel to communicate with a party unless the attorney **knows** that party to be represented by another lawyer. The facts before the Court show that Mr. Dady not only received an indication before the May 16 interview that Robert Finger was no longer represented by counsel for Superior Walls in light of Fingers' recent resignation from the company, but upon inquiry at the commencement of the May 16 interview, Mr. Dady received a verbal representation that Finger believed he was not represented by counsel for Superior Walls.

The first inquiry, under Rule 4.2, must be whether Mr. Dady knew

Mr. Finger to be represented. The "terminology" section of the Minnesota Rules of Professional Conduct defines "knows" as "actual knowledge of the fact in question," although, "a person's knowledge may be inferred from the circumstances." Id. Importantly, Rule 4.2 *does not* use the phrase "reasonably should know" which appears elsewhere in the rules (e.g. Rule 4.3) and denotes "that the lawyer believes the matter in question and that the circumstances are such that the belief is reasonable." Id. The word "reasonable" represents "the conduct of a reasonably prudent and competent lawyer." Id. Consequently, the use of "knows" in Rule 4.2, instead of "reasonably should know", suggests that while an attorney's knowledge may be inferred from the circumstances, the lawyer violates 4.2 *only* when the *particular* lawyer in these particular circumstances possesses *actual knowledge*. See e.g., Oklahoma Bar Assoc. v. Harper, 995 P.2d 1143, 1147 (Okla. 2000) (noting that "ascribing actual knowledge to a lawyer based on the facts is not the same as applying the rule under circumstances where the lawyer should have known").

The Defendants heavily rely on Formal Opinion 95-396, *Communications with Represented Persons*, wherein the ABA clearly identifies a greater investigation burden on an attorney seeking to interview a person "known to have been represented by counsel in the matter but who declares that the representation has been or will be terminated . . . ." ABA Comm. on Ethics and Professional Responsibility, Formal Op. 95-396 § 8 (1995).

The opinion, however, has never been incorporated into the Minnesota Rules of Professional Conduct.

Presented with facts similar to those in the present case, the Texas Court of Appeals specifically adopted the communication bar when opposing counsel has entered an appearance. See In re News Am. Publ'g, 974 S.W.2d 97, 104 (Tex. App. 1998) (4-3 decision) ("We adopt the ABA's position relative to these procedural rules . . . ."). But, one year later, the Texas Supreme Court reversed the Appeals Court stating, "we disagree . . . that communication concerning litigation is not allowed if a party's former lawyer has not withdrawn his appearance. The ABA [Opinion 95-396] cites authority for other statements but none for this one." In re Users System Serv. Inc., 22 S.W.3d 331, 336 (Tex. 1999).

The Plaintiffs in the present case focus the Court's attention on In re Users System Services, Inc., in which the Texas Supreme Court addressed the question of "whether a lawyer should be disqualified from continuing to represent a litigant in a civil case for meeting with an opposing party, at the party's request, if prior to the meeting the party stated that he was no longer represented by counsel, but his former attorney had not withdrawn from the case." 22 S.W.3d at 322. Of course, in the case presently before this Court, the motion is one not for disqualification of an attorney, but for the exclusion of evidence to remedy the allegedly improper contact between Mr. Dady and a

Robert Finger, a former employee of Defendant Superior Walls. Nevertheless, because the factual circumstances are nearly identical, and because Rule 4.02 of the Texas Disciplinary Rules of Professional Conduct is similar to Minn. R. Prof. Conduct 4.2, the Court finds both the discussion and holdings in Users System persuasive and quite instructive in the matter currently before this Court.

As noted by the Users System court, "Rule 4.02 [of the Texas Disciplinary Rules of Professional Conduct] forbids a lawyer from communicating with another person only if the lawyer *knows* the person has legal counsel in the matter." 22 S.W.3d at 334. In Users System, the opposing party had, at one time, been represented by counsel but, after initiating contact with the plaintiff and plaintiff's attorney, affirmatively represented (by letter), that he was no longer represented by counsel. Id. The Users System court stated that where an attorney has no reason to doubt an adversarial client's statement regarding the status of his representation, the attorney is not required to contact opposing counsel prior to speaking with the opposing party, nor is the attorney required to contact a person's former attorney to confirm the person's statement that representation has been terminated before communicating with the person. Id.

The Users System court observed that an attorney may not even be able to provide confirmation if the attorney and his client have not

communicated. 22 S.W.3d at 335. And, the client may have reasons, in some circumstances, for not communicating with his attorney about discontinuing representation. Id. "A client can discharge an attorney at any time, with or without cause", and a "client's right to terminate the relationship is not limited by the attorney's responsibilities to a court as counsel of record for the client." Id. The court noted that the Texas Rules of Civil Procedure do not speak to a client's right to terminate the representation or require that notice first be given to the court. Id. Stated the court,

> [o]n the other hand, the procedure prescribed by Rule 12 [Texas Rules of Civil Procedure] for requiring an attorney to show his authority to act for a party presupposes the possibility that an attorney can be counsel of record for a party he is not authorized to represent. The rules contemplate that authorization may not have existed or may cease before the attorney has withdrawn from the case.

Id. Consequently, the Users System court concluded that no violation of the governing ethical rule, Rule 4.02 , had occurred and, that even if the "spirit" of the rule had been violated, the attorney's actions did not cause any prejudice that would require disqualification. 22 S.W.3d at 336.

This Court finds in the present case, viewing the circumstances in their totality, that although it would have been prudent for Mr. Dady to confirm Mr. Finger's status as an unrepresented party with opposing counsel, there is no evidence that Mr. Dady violated Minn. R. Prof. Conduct 4.2. Robert Finger telephoned Steven Hunter, informed him that he had resigned from Superior

Walls, and requested a meeting with Hunter and Hunter's attorney. Mr. Dady inquired of Finger, prior to the commencement of their meeting on May 16, 2001, whether Finger was represented by counsel. He explained the purpose of his inquiry, his role as counsel for the Plaintiffs, and told Finger that he (Dady) could not speak with Finger if Finger was represented by counsel. The Court finds that Mr. Dady employed reasonable diligence to ensure that he complied with the mandates of Rule 4.2. Dady and Hunter were aware that Finger's resignation from Superior Walls apparently resulted from a dispute over commissions Finger was allegedly owed, and it was reasonable to conclude that the attorney-client relationship had ended before the appearance was withdrawn where, as here, there was a possible conflict of interest present. The record supports the finding that prior to and during the meeting it was reasonable for Mr. Dady to conclude that Mr. Finger was not represented by counsel.

Under Rule 4.2, Mr. Dady was not obligated to contact Mr. Pressman and confirm Mr. Finger's belief that he was no longer represented by Pressman. The record indicates that Mr. Finger exhibited confusion about the status of his legal representation at the conclusion of the May 16 meeting, when he asked Mr. Dady if he should call Mr. Pressman. Mr. Dady responded by telling Mr. Finger he could not give Finger legal advice, and asked Finger why he would want to contact his former attorney.

Finally, the record of correspondence and communications which followed the May 16, 2001 meeting support the determination that Robert Finger did not believe he was represented by counsel for Superior Walls after he resigned from the company. See the Hunter and Dady Affidavits and exhibits attached thereto.

The Court also finds that Mr. Dady complied with the requirements of Minn. R. Prof. Conduct 4.3, which governs attorney contact with unrepresented clients. Rule 4.3 provides:

> (a) In dealing on behalf of a client with a person who is not represented by counsel, a lawyer shall clearly disclose whether the client's interests are adverse to the interests of such person and shall not state or imply that the lawyer is disinterested.
>
> (b) When the lawyer knows or reasonably should know that the unrepresented person misunderstands the lawyer's role in the matter, the lawyer shall make reasonable efforts to correct the misunderstanding.
>
> (c) During the course of representation of a client, a lawyer shall not give advice to a person who is not represented by a lawyer, other than the advice to secure counsel, on those issues as to which the interests of each person are or have a reasonable possibility of being in conflict with the interests of the client.

The Court notes that Mr. Dady informed Robert Finger of his role as counsel for Plaintiffs, and stated that he could not offer legal advice to Mr. Finger. The Court finds that Mr. Dady breached neither his duties under Minnesota Rules of Professional Conduct 4.2 or 4.3, and that exclusion of evidence is not required under the facts of this case. See Minnesota v. Willis,

559 N.W.2d 693, 698 (Minn. 1997)("[e]ven if [Rule 4.2] was violated, exclusion for statements taken in violation of the rule is not required."); Minnesota v. Ford, 539 N.W. 2d 214, 224 (Minn. 1995)("statements taken in violation of Rule 4.2, MRPC, are 'subject to exclusion' -- exclusion is not required.")

Defendants' motion to exclude evidence is denied.

Based on the foregoing, and all the files, records and motion proceedings herein,

**IT IS HEREBY ORDERED** that:

1) Defendants' Motion for Order to Exclude Evidence (Doc. Nos. 10 and 12) is **DENIED**.

Dated: September 13, 2001.

Susan Richard Nelson
SUSAN RICHARD NELSON
United States Magistrate Judge

**Please forward this announcement to the recipient of this fax.**

---

# The United States District Court, District of Minnesota announces two new programs!

**Expedited Trials** –The Court will begin offering parties an opportunity to participate in a program called Expedited Trials beginning July 2, 2001. This voluntary program offers an alternative to traditional case processing by allowing for a shorter time period from filing to disposition. Discovery and motion practice will be sharply limited as a means to reduce time and expense. Procedural rules are on the Court's website at www.mnd.uscourts.gov. If you would like additional information about the Expedited Trials Program, contact one of our clerk's offices at the phone numbers listed below.

**Courtroom Technology – Phase II** – In June 2001, the District of Minnesota began upgrading, installing, and enhancing the technology available to counsel in the courtroom. The project will continue through early fall and will ultimately upgrade all Article III Judge courtrooms in St. Paul and Minneapolis. To assist counsel with this transition, the District Court is offering a hands-on class, worth one hour of CLE credit at both courthouses. Classes will be held over the lunch hour. Course registration can be done by visiting www.mnd.uscourts.gov or by calling Kristine at 612-664-5125.

**For additional information on either program please visit our website at www.mnd.uscourts.gov.**

---

700 Federal Building
316 North Robert Street
St. Paul, MN 55101
(651) 848-1100

202 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415
(612) 664-5000

417 U. S. Courthouse
515 West First Street
Duluth, MN 55802
(218) 529-3500